**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**KOWASI DENNIS ASHBY, Defendant**

Criminal No. 179/02

Territorial Court for the Virgin Islands

Division of St. Croix

September 26, 2002

TADIA D. KELLY, ESQ., Assistant Attorney General, Department of Justice, Christiansted, St. Croix, U.S. Virgin Islands, *Attorney for Plaintiff*

EDWARD H. JACOBS, ESQ., Christiansted, St. Croix, U.S. Virgin Islands, *Attorney for Defendant*

ROSS, *Judge*

## MEMORANDUM OPINION

(September 26, 2002)

On September 13, 2002, the Court heard Defendant's motion to suppress the introduction of evidence seized pursuant to an unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution.

## FACTS

On April 19, 2002 around 7:27 p.m., a female K-Mart employee called 911 to report a vehicle theft in progress. The employee identified herself

as a customer service worker and stated that a K-Mart security guard told her that a white Honda Civic was being stolen and that the individuals were still in the parking lot. Officer M'Wathi Hector, who took the call, filled out a complaint card with the information and turned it over to Officer Arlene Peterson, the dispatcher. Officer Peterson then broadcasted this information over the police radio to all units in the 'B' command area, describing the vehicle as a blue Honda Civic being stolen in the K-Mart/Sunshine Mall parking lot in the area around Payless Shoes store. At the suppression hearing, Officer Peterson testified that an officer on the scene, Officer Heraldo Charles, called in to correct the information that had been dispatched. Officer Charles told her that the vehicle was a white Honda Civic, rather than a blue one. She then dispatched the corrected information. Virgin Islands Housing Authority Officers Gail Liburd and Ronald Tutein heard the corrected description and went to the upper level of the parking lot, by the Payless Shoes store, to assist the Virgin Islands Police Department by looking for the white Honda Civic. Virgin Islands police officer Joseph Platt, who was patrolling in the area arrived within a minute and, not having heard the corrected description, started checking a blue Honda Civic that he saw in the upper level of the parking lot, where the other two officers were looking. He learned from the Housing officers that the vehicle was white. Officer Tutein then saw a white Honda Civic leaving through the main entrance to the K-Mart parking lot, pointed it out to the others, and all three officers followed. The white Honda Civic exited through the main entrance of the K-Mart parking lot at a normal speed and stopped at a gas station across the street. When the officers arrived, the driver was opening his door and beginning to exit the vehicle. The officers then approached, guns drawn, and ordered all the passengers, which included Defendant out of the vehicle and to the ground. They complied, and in doing so left the car doors open. When Officer Platt approached the car and its occupants he saw the handle of a gun below the rear of the driver's seat. At that point, the gun was seized and all the occupants were handcuffed, arrested and taken to Patrick Sweeney Police Headquarters. Defendant, after being read his *Miranda* rights, made a statement that the gun was his and that the others didn't know it was there. Based on these facts, Defendant was charged with unauthorized possession of a firearm. The gun was seized and a subsequent check of the firearm's registration revealed that, contrary to his statement, Defendant did not own the gun.

56

The registered owner had reported it stolen from her house after it was burglarized earlier this year. Defendant was subsequently charged with possession of stolen property. Defendant now moves to suppress the firearm and his statement as the fruits of an unlawful *Terry* stop, in violation of his constitutional rights under the Fourth Amendment of the United States Constitution.

## REASONABLE SUSPICION FOR THE TERRY STOP

The Fourth Amendment prevents "unreasonable searches and seizures." U.S. CONST. AMEND. IV. However, the United States Supreme Court has established that "a police officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 120 S. Ct. 673 (2000). "Reasonable suspicion ... is dependent upon both the content of the information possessed by police and its degree of reliability. Both factors, quantity and quality, are considered in the 'totality of the circumstances'" that must be taken into account when evaluating whether there is reasonable suspicion. *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990), quoting *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981). Where the officer conducts a *Terry* stop based on an informant's tip, the Court has also made it clear that "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are highly relevant in determining the value of" that tip. *White*, 496 U.S. at 328 quoting *Illinois v. Gates*, 462 U.S. 213, 230, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983).

In the matter *sub judice*, the government asserts that the officer had reasonable suspicion based on a tip from an employee at K-mart that a security guard told her that a white Honda civic was being stolen in the parking lot and that the individuals (no number given) were still out there. This was all the information reported, and it was the sole factor in the officers' decision to conduct a *Terry* stop of the white Honda Civic, as there was no traffic violation. One factor that may provide the informant with sufficient indicia of reliability is the fact that the tipster may have put her anonymity at risk by identifying herself as a K-mart customer service worker. *United States v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000), citing *Florida v. J.L.*, 529 U.S. 266, 276, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000). (Kennedy, J. concurring). However, the

57

tipster herein made it clear that she was relying on second hand information. She therefore had not seen the events that led to the 911 call. There is nothing on the record indicating whether the security guard actually saw the theft or if it was reported to the guard as well. Therefore, the police had no way of verifying that guard's reliability or basis of knowledge. Moreover, when Officer Hector contacted the informant again in order to question her further, she refused to give any more information, stating that it was not her job to do so. All these facts considered, this Court cannot find that, merely by virtue of the fact that the police could trace the source of the tip and identify the caller, the tipster had sufficient indicia of reliability to create the requisite level of reasonable suspicion. Therefore, this Court will look to the content of the tip, the amount of corroboration, and the other surrounding circumstances to determine if the totality of these circumstances give rise to sufficient reasonable suspicion to justify the *Terry* stop.

"If ... a tip on its own carries few indicia of reliability, much corroborating information is necessary to demonstrate reasonable suspicion. Thus, where the tip contains information ... that is of such a general nature as to be easily obtained by any observer, there is no reasonable suspicion." *United States v. Nelson*, 284 F.3d 472, 480 (3d Cir. 2002). A bare description of a white Honda Civic in the parking lot is one such tip. The tipster gave no other description of the vehicle. She did not quantify or describe the individuals allegedly stealing the vehicle, nor how she knew the vehicle was being stolen. Thus, the tip carried few indicia of reliability. Moreover, after the vehicle left the parking lot, it proceeded at a normal rate to a gas station across the street and stopped there. The driver was exiting the vehicle as the police approached. Officer Platt testified that as he approached the car, he told all the occupants to freeze, get out of the vehicle and lie on the ground. They all complied. These facts reveal a lack of independently suspicious behavior on the part of the occupants of the white Honda Civic. Officer Platt testified that in his experience, with motor vehicle theft in progress cases, weapons are often involved. Aside from this, there was no other basis for the officer to fear for his safety. The *Terry* stop took place during the evening, between 7:30 and 8:00 p.m.; and the government has not alleged that the stop took place in a high crime area, a factor often weighed by the courts. *See Adams v. Williams*, 407 U.S. 143, 147, 32 L. Ed. 2d 612, 92 S. Ct. 1921, 1924 (1972); *United States v. Valentine*, 232 F.3d 350, 356-357

(3d Cir. 2000). Taking all these factors into consideration, this Court concludes that, from the totality of the circumstances, the officers did not possess the requisite level of reasonable suspicion to justify the *Terry* stop of Defendant.

## PROBABLE CAUSE TO ARREST DEFENDANT

■ Even if the officers did possess the requisite level of reasonable suspicion to justify a *Terry* stop, they did not have probable cause for the subsequent arrest of Defendant. The amount of information constituting probable cause to arrest an individual has been described as "evidence which would warrant a man of reasonable caution in the belief that a felony has been committed." *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). Probable cause to arrest an individual exists when "the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief that an offense has been committed.'" *Beck v. Ohio*, 379 U.S. 89, 96, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964), quoting *Carroll v. United States*, 267 U.S. 132, 162, 69 L. Ed. 543, 45 S. Ct. 280 (1925). At the time Defendant was arrested, the police had no information other than Officer Platt's plain view sighting of a gun in the vehicle in which he was traveling. However, "[i]t is not necessarily a crime to possess a firearm in the Virgin Islands." *United States v. Ubiles*, 224 F.3d 213, 217 (2000), citing 23 V.I.C. § 470. Section 2253 of Title 14 of the Virgin Islands Code penalizes those who, "unless otherwise authorized by law, has, possesses, bears, transports, or carries either openly or concealed on or about his person, or under his control in any vehicle of any description any firearm ... ." On the facts submitted before this Court, Officer Platt never had any basis to believe that Defendant was not within the class of people authorized to possess a gun at the time he arrested Defendant. Therefore, at the time of the arrest, the officers did not possess probable cause to believe that a crime had occurred.

The Third Circuit opinion in *United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000), is particularly instructive on this issue. *Ubiles* involved a *Terry* stop conducted after an individual walked up to a deputy marshal and two on-duty police officers, described the defendant's clothing, appearance and location and told them that the defendant had a gun. The informant then pointed the defendant out to the marshal and the officers. The Third Circuit held that the gun found pursuant to the *Terry* stop and

frisk conducted by the marshal and the officers should have been suppressed because those officials "had no reason to believe that Ubiles was 'involved in criminal activity ...'" *Ubiles*, 224 F.3d at 217 quoting *Illinois v. Wardlow*, 120 S. Ct. at 676. The "mere allegation that a suspect possesses a firearm, as dangerous as firearms may be," does not provide the reasonable suspicion required by Terry. *Ubiles*, at 217-218. "[W]hile there are ways to possess a gun illegally in the Territory—such as ... by possessing an unlicensed gun," see 14 V.I.C. § 2253(a), under 23 V.I.C. § 454 "[a] firearm may be lawfully had, possessed, borne, transported or carried in the Virgin Islands" by certain persons, "provided a license for such purpose has been issued by the Commissioner in accordance with the provisions of this chapter." Moreover, a license to own or possess a firearm is not even required for those persons who fit the categories set forth in 23 V.I.C. § 453(a)(1)-(5).[1] Those individuals may also "lawfully have, possess, bear, transport and carry firearms in the Virgin Islands" without a license. 23 V.I.C. § 453(a).

■ The Government presented no evidence that Officer Platt was aware of any articulable facts suggesting that the gun Defendant possessed was unlicensed or that he was not within the class of persons authorized to possess a firearm. In other words, at the time of the arrest the officers did not have probable cause to believe that Defendant was not licensed or otherwise authorized to possess the gun Officer Platt saw in plain view under the driver's seat. Under the laws of the Virgin Islands, if a police officer sees or discovers a firearm on the person or in the control of a person, that officer cannot, based on that observation alone, arrest that person. *See* 14 V.I.C. § 2253; V.I. CODE ANN. Tit. 23 Ch. 5. Herein, this Court finds no probable cause to believe that the firearm was, in fact, unlawfully possessed. Consequently, Defendant's motion to suppress the gun and his statement will be granted.

---

[1] These persons include military personnel, employees of the United States who are authorized by federal law to carry firearms, persons employed in fulfilling defense contacts with the United States government or agencies thereof where possession or use of firearms is necessary under the provisions of such contract, police officers, marshals, other duly authorized peace officers, penitentiary and jail wardens and guards.